IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

MARK C. PATTERSON                                                          PLAINTIFF

vs.                                                  CIVIL ACTION NO. 2:10CV00042-SAA

COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION                                             DEFENDANT

## MEMORANDUM OPINION

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Mark C. Patterson for a period of disability and disability insurance benefits (DIB) under Section 216(I) and 223(d) of the Social Security Act. Plaintiff filed an application for DIB on November 1, 2006, alleging disability beginning on September 26, 2006.[1] Docket 5, Exhibit 6, p. 90-92.[2] Plaintiff's claim was denied initially (Ex. 5, p. 56-58) and on reconsideration. Ex. 5, p. 65-66. He filed a request for hearing (Ex. 5, p. 68) and was represented by an attorney at the administrative hearing on February 10, 2009. Ex. 3, p. 18-53. The Administrative Law Judge (ALJ) issued an unfavorable decision on April 8, 2009 (Ex. 3, p. 10-17), and the Appeals Council denied plaintiff's request for a review. Ex. 3, p. 1-4. Plaintiff filed the instant appeal

---

[1] The Plaintiff asserts that he additionally filed for supplemental security income payments. Docket 11, page 3. However, the record does not contain evidence of an application for SSI benefits.

[2] The Administrative Record in this case is attached to the defendant's Answer at Docket Entry 5. All citations to the Administrative Record are to the Exhibit and Page Number at Docket Entry 5.

from the ALJ's most recent decision, and it is now ripe for review. Because both parties have consented to have a magistrate judge conduct all the proceedings in this case under 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

## I. FACTS

Plaintiff was born on April 27, 1961. Ex. 6, p. 90. He was 45 years old at the alleged onset of his disability and 47 years old at the time of the ALJ's decision. Ex. 3, p. 28. He graduated from high school and attended three years of college (Ex. 3, p. 25-26) and previously worked as a assistant store manager, restaurant manager, purchasing manager and sewing supervisor. Ex. 3, p. 44-45. Plaintiff claimed disability beginning September 26, 2006 due to severely diminished heart function, high blood pressure and slow reaction time due to lack of blood flow. Ex. 7, p. 114.

The ALJ determined that plaintiff suffered from "severe" impairments, including heart disease with defibrillator implantation, but that these impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 C.F.R. 404.1525 and 404.1526) because the plaintiff's heart disease "consistently improve[d] following the implantation of the defibrillator." Ex. 3, p. 12-14.

Considering plaintiff's "severe" impairments, the ALJ concluded that the plaintiff retains

> the Residual Functional Capacity [RFC] to perform sedentary work as defined in 20 C.F.R. 404.1567(a) "except he can never climb ladders, ropes, or scaffolds; he can occasionally climb ramps and stairs, stoop, crouch, kneel, but never crawl; he should avoid all sharp or heavy moving machinery and all unprotected heights, and; he has pacemaker restrictions (significant radiation or microwaves, etc.).

Ex. 3, p. 14. The ALJ held that the plaintiff's statements concerning the intensity, persistence

and limiting effects of his symptoms were "not credible to the extent they are inconsistent with the above residual functional capacity assessment." Ex. 3, p. 15. He further afforded "no weight" to the plaintiff's treating physician Dr. Newman because the doctor did not refer to any evidence of objective medical results or examination findings to support his conclusions. *Id.*

After evaluating the evidence in the record, the ALJ held that the plaintiff was unable to perform the exertional level of his past relevant work. Ex. 3, p. 16. However, based on testimony of a vocational expert [VE], the ALJ concluded that plaintiff retained the residual functional capacity to perform the full range of sedentary work and was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Ex. 3, p. 16-17. The VE testified that, with the limitations set out by the ALJ in his hypothetical question to the VE, the plaintiff would be able to perform unskilled sedentary jobs such as telephone quotation clerk, surveillance system monitor and final assembler. Ex. 3, p. 44-47. The ALJ concluded that the plaintiff was, therefore, "not disabled" under the Act. Ex. 3, p. 16-17.

The plaintiff claims the ALJ erred in not following the treating physician's rule, failing to re-contact the treating physician for clarification and in assessing the credibility of the claimant. Docket 11, p. 6-15.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[3] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining his burden at

---

[3]*See* 20 C.F.R. §§ 404.1520 (2003).

3

each of the first four levels, then the burden shifts to the Commissioner at step five.[4] First, plaintiff must prove he is not currently engaged in substantial gainful activity.[5] Second, plaintiff must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[6] At step three the ALJ must conclude plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2003).[7] If plaintiff does not meet this burden, at step four he must prove that he is incapable of meeting the physical and mental demands of his past relevant work.[8] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[9] If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that he cannot, in fact, perform that work.[10]

This court is limited on appeal to determining whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Qualls v. Astrue*, 339 Fed. Appx. 461 (5th Cir. 2009), citing *Brown v. Apfel*, 192 F.3d

---

[4]*Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991).

[5]20 C.F.R. § 404.1520(b) (2003).

[6]20 C.F.R. § 404.1520(b) (2003).

[7]20 C.F.R. § 404.1520(b) (2003).

[8]20 C.F.R. § 404.1520(e) (2003).

[9]20 C.F.R § 404.1520(f)(1) (2003).

[10]*Muse*, 925 F.2d at 789.

492, 496 (5th Cir.1999). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has the limited power of review and may not re-weigh the evidence or substitute its judgment for that of the Commissioner,[11] even if it finds that the evidence leans against the Commissioner's decision.[12] In the Fifth Circuit substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

## III. DISCUSSION

The plaintiff has not engaged in substantial gainful activity since September 25, 2006,

---

[11]*Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[12]*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

satisfying step one.[13] Ex. 3, p.22. The ALJ found at step two that plaintiff's heart disease was a severe impairment. Ex. 3, p. 14. He found at step three that plaintiff's impairment did not meet the stringent requirements set out in the listings,[14] and at step four that plaintiff could not return to his past work. Ex. 3, p. 16. The ALJ concluded at step five that the plaintiff is capable of performing other work and is, therefore, not disabled. Ex. 3, p. 16-17.

The plaintiff suffered a myocardial infarction on September 26, 2006. Ex. 8, p. 254. He underwent aortic valve replacement on October 2, 2006 (Ex. 8, p. 254) and surgery to implant a defibrillator on January 11, 2007 (Ex. 8, 226) and a right heart catheterization following a diagnosis of cardiomyopathy on August 23, 2007. The ALJ found that the plaintiff's heart disease consistently improved following the implantation and cited a medical record indicating that the plaintiff "fairly active" and had "no complaints of dyspnea on exertion" (Ex. 8, p. 288) by January 24, 2007.[15] Ex. 3, p. 14. However, the plaintiff's treating physician, Dr. Newman reported in his medical source statement on April 19, 2007 that the plaintiff continued to suffer from "dyspnea with minimal exertion" and should avoid all meaningful employment. Ex. 8, p. 309-312. The doctor further stated, "This is a very serious condition. This gentleman could die on the job." *Id.* Dr. Newman confirmed his opinion in a second medical source statement dated January 26, 2009. Ex. 8, p. 359. The ALJ concluded that because Dr. Newman's opinion was

---

[13]The plaintiff took medical leave after hospitalization for a heart attack on September 25, 2006 and was administratively terminated from his employment in April 2008. Ex. 3, p. 22.

[14] *See Selders v. Sullivan*, 914 F.2d 614, 617, 619 (5th Cir. 1990), citing *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 891-92 (1990) (claimant bears the burden of proof to show medical findings that he meets each element of the listing).

[15]The ALJ additionally supported this finding with a medical record indicating that the plaintiff was "relatively asymptomatic" (Ex. 8, p. 326) on October 10, 2006. Ex. 3, p. 15. This entry, of course, was made before the plaintiff's defibrillator implantation the following January.

not supported by his examining and treatment notes, it should be afforded "no weight." Ex. 3, p. 15.

The plaintiff argues that the ALJ did not give Dr. Newman's opinion proper deference under 20 C.F.R. §404.1527(d)(2) and erred in not performing a detailed analysis of Dr. Newman's opinions under *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Docket 11, p. 6-15. In response, the Commissioner argues that Dr. Newman's opinion was properly rejected because his examining or treating notes do not support his statement that the plaintiff cannot perform even sedentary work. Docket 12, p. 8-9.

In *Newton*, the Fifth Circuit noted that there are several factors that the ALJ must consider before declining to give evidence of a treating physician controlling weight:

> (1) the physician's length of treatment of the claimant,
> (2) the physician's frequency of examination,
> (3) the nature and extent of the treatment relationship,
> (4) the support of the physician's opinion afforded by the medical evidence of record,
> (5) the consistency of the opinion with the record as a whole; and
> (6) the specialization of the treating physician.

*See* 20 C.F.R. § 404.1527(d)(2). Social Security Administration Regulations provide that the SSA "will always give good reasons in [its] notice of determination or decision for the weight [it] gives the claimant's] treating source's opinion," and the regulations list factors an ALJ must consider in assessing weight given to the opinion of a treating physician when the ALJ determines that it is not entitled to "controlling weight." *See Id.* The regulation is construed in Social Security Ruling ("SSR") 96-2p, which states:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be

7

> rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.

*Newton* at 456. According to the plaintiff, the ALJ's decision not to credit Dr. Newman's opinion resulted in a decision that was not based upon substantial evidence. The Commissioner responds that even though the ALJ may not have addressed the *Newton* factors in rote form, he nevertheless fully addressed the proper factors in his analysis before deciding that Dr. Newman's opinion should not be given credence. Docket 12, p. 12.

In the Fifth Circuit "a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir. 1995); 20 C.F.R. § 404.1527(d)(2). Although a treating physician's opinion and diagnosis should be given considerable weight in determining disability, "the ALJ has sole responsibility for determining a claimant's disability status." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). "'[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (citation omitted). Good cause may exist to allow an ALJ to discount the weight of evidence of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *Newton v. Afpel*, 209 F.3d 448, 456 (5th Cir. 2000).

Under SSR 96- 5p, an ALJ must provide appropriate explanations when he does not grant the treating physician's opinions controlling weight. *Id.* In this case, the ALJ reviewed Dr. Newman's records and medical source statements and declared the reasons for not following his

opinion. However, the ALJ failed to specifically follow the criteria laid out in *Newton*. Instead, he stated that he considered Dr. Newman's opinion and made a conclusory determination that those opinions were not supported by the objective medical evidence[16] and were "simply too restrictive to be realistic." Ex. 3, p. 15.

In support of his decision to disregard Dr. Newman's opinion, the ALJ cites the plaintiff's testimony that his heart condition was "not bad enough to be placed on the list for a heart transplant."[17] Ex. 3, p. 15. However, the ALJ did not seek additional information from Dr. Newman clarifying the criteria for heart transplant recipients or elaborating on his recommendation that the plaintiff seek a heart transplant, nor did he otherwise seek information about any objective or clinical findings that might support Dr. Newman's opinions that plaintiff was so severely limited. The ALJ held, "Without more, I simply cannot rely on Dr. Newman's opinion in light of regularly scheduled treatment notes stating the contrary" but did not specify what treatment notes are "contrary" to his opinion. Ex. 3, p. 15-16. The court notes, however, that Dr. Newman appears to have considered separately each function upon which he was asked

---

[16]The ALJ stated, "I recognize that Dr. Newman is the [plaintiff's] treating physician and I have considered his opinion regarding the claimant's physical ability; however, I see no evidence upon which Dr. Newman can conclude that the claimant can perform no work activity." Ex. 3, p. 15.

[17]"Q Can you help me understand what the deal with the heart transplant is? Is your doctor recommending that or not recommending?
A Yes, he recommended it but you have to go through a series of testing and I'm not at the minimum level, I'm above it. So, if I dip down to the level then you go on farther with the next stage of testing which is a lot of things... But the coordinator over the transplant had said I wasn't at that level yet.
Q So, to summarize, your doctor wants you to get a heart transplant but you can't because you're not , you don't have the stats to at that level yet?
A Correct." Ex. 3, p. 43.

to opine, assigning differing limitations to each; in other words, he does not appear to have set out to assign the most severe limitations in every category about which he was asked.

The only other RFC assessments in the Record are those of Dr. Michael Maples a non-examining Agency physician, whose last assessment is dated March 1, 2007 (Ex.8, p. 299-306), and whose opinions differ dramatically from those of Dr. Newman, a board-certified cardiologist and professor at the University of Tennessee Medical School.[18] Some courts have held that "[m]edical reports that are not based on personal observation 'deserve little weight in the overall evaluation of disability.'" *Hilsdorf v. Commissioner of Social Security*, 2010 WL 2836374, at *13 (E.D.N.Y. July 15, 2010), citing *Vargas v. Sullivan*, 898 F.2d 293, 295-96 (2d Cir. 1990); see also *Filocomo v. Chater*, 944 F.Supp. 165, 170 (E.D.N.Y. 1996) (reliance on RFC assessment "completed by a doctor who never physically examined plaintiff" would be "unfounded, as the conclusions of a physician who merely reviews a medical file and performs no examination are entitled to little if any weight."). Given that the agency and treating physicians provided opposing opinions and that the agency physician never examined the plaintiff, the RFC from the treating physician was particularly important. A treating physician such as Dr. Newman has a unique perspective regarding the plaintiff's abilities, limitations, medical history and diagnosis.

Furthermore, the ALJ did not seek a medical source statement from Dr. Lan, the plaintiff's cardiac surgeon, or obtain another consultative examination of the plaintiff from

---

[18]Dr. Maples found that the plaintiff could occasionally lift 20 pounds, frequently lift and/or carry 10 pounds, stand, walk or sit for 6 hours in an 8-hour workday, climb ramps or stairs, stoop, kneel crouch or crawl frequently, climb ladders, ropes or scaffolding occasionally, and balance occasionally. Ex. 8, p. 299-306. He relied on evidence that "at follow up TP states claimant is active without significant dyspnea or orthopnea." Ex. 8, p. 300.

another physician. An ALJ has a duty to contact a treating physician or other medical sources "[w]hen the evidence . . . receive[d] from [a] treating physician . . . is inadequate . . . to determine whether [a claimant] is disabled." 20 C.F.R. §§ 404.1512(e), 416.912(e). These regulations further provide "additional evidence or clarification *will* be sought" [emphasis added by the court] "when the report from [a] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(2)(1), 416.912(e)(1). Additionally, "[a]n ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position.'" *Morgan v. Astrue*, 2010 WL 2697170, *8 (N.D.Tex. July 7, 2010), citing *Loza v. Apfel*, 219 F.3d 378,393 (5th Cir. 2000).

In considering whether the ALJ's decision is supported by substantial evidence, the court considers objective medical facts, diagnoses and opinions of treating and examining physicians, the claimant's subjective evidence of pain and disability, and the claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam), citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). Although the ALJ has considerable discretion in reviewing facts and evidence, he is not qualified to interpret raw medical data in functional terms. *Perez v. Secretary of Health and Human Services*, 958 F.2d 445, 446 (1st Cir. 1991) (citations omitted); *see Richardson v. Perales*, 402 U.S. 389, 408 (1971) (upholding the use of testimony from vocational expert because the ALJ is a layman). As previously noted, where an ALJ fails to provide appropriate explanations in not affording proper weight to a plaintiff's treating physicians' opinions, the case must be remanded. *Newton*, 209 F. 3d at 456.

11

The undersigned finds that ALJ declined to give the plaintiff's treating physician controlling weight without performing the required analysis under *Newton* or attempting to obtain additional information that would have allowed him to evaluate Dr. Newman's opinion.[19] Consequently, this court is unable to properly evaluate whether he considered all the necessary factors and cannot afford the plaintiff a full and meaningful review of this appeal. The specific grounds for discounting plaintiff's treating physician are integral to a determination of whether the ALJ's decision was supported by substantial evidence. Therefore, the undersigned finds that decision of the Commissioner should be remanded for further proceedings in accordance with this opinion.

## IV. PLAINTIFF'S REMAINING ARGUMENTS

Because this action is remanded for further consideration of the plaintiff's treating physician's records and opinions and for analysis in accordance with *Newton*, including ordering a consultative examination of the plaintiff, the court need not address the merits of the plaintiff's remaining arguments at this time.

## V. CONCLUSION

A final judgment in accordance with this memorandum opinion will issue this day.

**SO ORDERED**, this, the 17th day of December, 2010.

/s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE

---

[19] The ALJ has an affirmative duty to develop the record and to "ensure that his decision is an informed decision based upon sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996).